Philpot v. Penn.

## PHILPOT, *Appellant*, v. PENN *et al.*

1. **Resulting Trust:** BURDEN OF PROOF. The *onus* of establishing a resulting trust rests upon the party seeking its enforcement.

2. ———: PAROL EVIDENCE: QUANTUM OF PROOF. Where it is sought to establish such trust by parol evidence, the latter, to warrant a decree, must be so clear, definite, and positive, as to leave no reasonable ground of doubt as to the right to have the trust established.

3. ——— : ——— : ———. The evidence in this case examined and held not to meet the requirements of the above rule, and the action of the court, in dismissing plaintiff's bill, affirmed.

*Appeal from Bates Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED.

*P. H. Holcomb* for appellant.

The evidence clearly and conclusively establishes the facts to be substantially as stated in the petition, and

from these facts a resulting trust arises in favor of appellant, which entitles him to the relief prayed for. A resulting trust may be proved by parol testimony. *Groves v. Fulsome*, 16 Mo. 543 ; *Cason v. Cason*, 28 Mo. 47 ; *Johnson v. Quarles*, 46 Mo. 423. Such testimony is admissible after the death of the nominal purchaser. Perry on Trusts, sec. 138 ; Bispham's Equity, sec. 83 ; *Kennedy v. Kennedy*, 57 Mo. 73. A less degree of certainty in the evidence would be required, where the nominal purchaser never exercised any act of ownership under his title. *Ringo v. Richardson*, 53 Mo. 396. Under the facts proved, the plaintiff ought to have the relief prayed for. *Carman v. Johnson*, 20 Mo. 108 ; *Kelly v. Johnson*, 28 Mo. 249. When one person pays the purchase money for land, and the title is conveyed to another, a trust results in favor of the party who paid for the land.

*John T. Smith* for respondents.

(1) The evidence in this cause is not sufficiently clear, certain, and convincing to establish a trust. *Johnson v. Quarles*, 46 Mo. 423 ; *Forrester v. Scoville*, 51 Mo. 268 ; *Modrell v. Riddle*, 82 Mo. 31 ; *Marsh v. Whitmore*, 21 Wallace, 184. (2) Where one person enters land in the name of another, in evasion of, or in violation of, any regulation or law of the land office, neither equity nor law will aid him in enforcing his trust. 6 Wend. 228 ; *Miller v. Davis*, 50 Mo. 572 ; *Higgins v. Higgins*, 55 Mo. 346. (3) Plaintiff having failed to plead or prove any fact explaining his delay in bringing this action, the chancellor should not listen to him. *Walker v. Ray*, 20 Cent. Law Jour. 137; *Lansdale v. Smith*, 16 Cent. Law Jour. 28 ; *State ex rel. Polk Co. v. West*, 68 Mo. 229 ; *Bliss v. Pritchard*, 67 Mo. 181, and cases there cited ; *Badger v. Badger*, 2 Wall. 94 ; *Marsh v. Whitmore*, 21 Wall. 184.

NORTON, C. J.—It appears, from the record in this case, that, in 1857, at the United States land-office in War-saw, a certain military land warrant for eighty acres of land, which had been issued to one Francis Sudbury, and by her assigned to S. Milton Penn, was located on 76.93 acres of land in Bates county, and a certificate of entry issued to said S. Milton Penn, who died in 1876, leaving as his heirs the defendants in this suit, against whom the suit was instituted in the Bates county circuit court in 1883, for the purpose of having the court decree, that the land so entered was held by said Penn and his heirs in trust for plaintiff.

The plaintiff, in his petition, bases his claim to the relief asked on averments therein made, to the effect that one E. S. Penn was the real owner of said land warrant ; that the consideration for the assignment thereof, by said Sudbury, was wholly paid by him, and that the assign-ment to said S. Milton Penn was so made that he might hold the same in trust for the said E. S. Penn ; that the said E. S. Penn located said warrant on the land in question, and took the certificate of entry in the name of S. Milton Penn ; that said Milton Penn, by his writ-ing, in due form assigned and transferred said certificate of entry to said E. S. Penn, who, on December 16, 1857, for a valuable consideration, sold and conveyed the land, by his deed, duly executed, to M. W. Dallas, and also assigned to him the certificate of entry ; that said Dallas, on the sixteenth day of July, 1859, conveyed the land, by his deed, to plaintiff ; that said certificate has been lost ; that a patent issued from the general land office on the third day of January, 1860, conveying said land to S. Milton Penn ; that, while the record of conveyances shows the apparent title to said lands to be in S. Milton Penn, or his heirs, they have no real interest therein, but hold the same in trust for plaintiff. The answer of defendants, besides being a general and specific denial,

sets up that S. Milton Penn died a long time after he had taken out a patent to the land in his own name, which was issued after the alleged assignment of the certificate of entry, and that plaintiff and his grantors were duly apprised thereof, but failed and neglected to question his title during his lifetime. On the hearing, the trial court dismissed the bill, and it is this action of the court we are asked to review on plaintiff's appeal.

Plaintiff put in evidence a deed to the land in controversy, from E. S. Penn to M. W. Dallas, dated December 16, 1857, and filed for record October 3, 1876; also, a deed from said Dallas to S. B. Philpot, the plaintiff, dated July 16, 1859, and filed for record October 3, 1876; also tax receipts showing payment by plaintiff of taxes from the years 1873 to 1883 inclusive, except the year 1876. E. S. Penn, whose deposition was taken in 1884, testified that he entered the land in dispute in the name of S. Milton Penn, at the land office, in Warsaw, on the fifteenth day of December, 1857, with a land warrant which he owned; that, shortly after he entered it, the certificate was assigned to him by S. Milton Penn, who resided in the state of Ohio; that he sold the land to M. W. Dallas for two dollars per acre, and passed all title papers in his possession to him; that S. Milton Penn, at the time he sold, had no interest in the land. He further testified that he dealt considerably in western lands, and that, in October, November, and December, 1857, he purchased for himself and others, at the land office, thirty thousand acres, and in 1858, over fifty thousand acres for himself, and as agent for other parties; that the number of persons interested in the lands purchased was probably over one hundred; that what he said about the land in controversy was purely from memory; that he might be mistaken as to his ownership of the land in question, but it was not probable; that his memory was not as good now as it was years ago, and for the last six

months has been very bad at times by reason of a severe
injury; that S. Milton Penn was his brother, and died
in 1876; that the relations between them were unfriendly
from 1875 up to the time of his death; that over twenty-
six years had elapsed since the transactions occurred
about which he was testifying; that, owing to the rush
of persons at the land office to enter lands, the register
would not permit one person to enter more than three
hundred and twenty acres, and, in order to evade said
regulation, he made entries in the names of various
friends of his, who afterwards conveyed by assignment of
certificates of entry or quit-claim; that the entry of the
land in suit was one of them.

M. W. Dallas testified as follows: ":I met E. S.
Penn in Warsaw, Benton county, Missouri, in the fall
of 1857. I was in Missouri for the purpose of locating
some land warrants, at the Warsaw land office. I had
some warrants for myself and others, among them land
warrants of S. B. Philpot. The office at Warsaw was
temporarily closed, and I arranged with E. S. Penn to
locate some warrants, and traded some land warrants
for land already located, and, as I now recollect, bought
some land entered in his name. I think that some of
the land was entered in the name of S. Milton Penn,
who was represented as being the brother of E. S. Penn.
Among other lands was a tract of land containing
seventy-six acres and a fraction; my recollection is, that
this seventy-six acres was for S. B. Philpot, and was
transferred to me to be re-transferred to him. I have
no recollection of any fractional lot but the one in the
whole transaction. Mr. Penn, in transferring the land
to me, made said transfer in due form, as I now recollect,
accompanied with all papers connected with chain of
title, and all of said papers were given to S. B. Philpot,
or his attorneys, Hollister and Okey. I have no certifi-
cate of location, or any papers or documents of any kind

in my possession, and I have no knowledge where such papers are, further than herein stated."

Plaintiff, Philpot, testified as follows: "In 1857, M. W. Dallas went to Missouri to locate land warrants for himself and others. I sent with him four land warrants to be located for me at the general land office, in Warsaw, Missouri. In making disposition of my warrants M. W. Dallas traded one of them to Elijah S. Penn for the $76\frac{93}{100}$ acres of land now in controversy in this case. Said Penn made M. W. Dallas a deed for said land, and Dallas afterward conveyed the same to me. These deeds are both on record in Bates county, Missouri. In drawing the deed from said Dallas to me, by a mistake of the scrivener and mutual mistake of the parties, one-half of lot number twelve was left out of the deed. The whole $76\frac{93}{100}$ acres was bought and paid for by me and intended to be included in the deed. I have not got the certificate of entry of said land, nor have I any recollection of ever seeing it."

Deposition of Wm. Okey, as follows: "I am an attorney at law; reside at Woodsfield, Monroe county, Ohio; was in partnership in the practice of law with Nathan Hollister at said Woodsfield in 1857, and for many years thereafter. Nathan Hollister is now deceased. I am acquainted with M. W. Dallas; knew him in 1857; recollect the time he went to Missouri to locate land warrants on public lands of the United States for S. B. Philpot and others. After said Dallas returned he delivered to Nathan Hollister and myself some certificates of entries he had made, but I have no recollection of ever seeing the certificate of entry for the $76\frac{93}{100}$ acres of land in controversy in this case. Mr. N. Hollister and myself procured the deed from M. W. Dallas to S. B. Philpot for said land. I have made diligent search for said certificate, but have never been able to find it."

It has been repeatedly held by this court that the

*onus* of establishing a resulting trust rests upon him, who seeks its enforcement, and where it is sought to establish such trust by parol evidence, it must, to warrant a decree, be so clear, definite and positive as to leave no reasonable ground for doubt. *Johnson v. Quarles,* 46 Mo. 423; *Forrister v. Scoville,* 51 Mo. 268; *Jackson v. Wood,* 88 Mo. 76. We are of opinion that the evidence, a full detail of which has been herein given, does not meet the requirements of the above rule, and, in view of the fact averred in the answer, and not denied, either by replication or proof, that the patent issued (in 1868) to S. Milton Penn, long before his death; that plaintiff and his grantors knew this fact and did not controvert his title till long after his death, and in view of the facts, that said Penn died in 1876, and that the deeds of plaintiff and his grantor, though made respectively in the years 1857 and 1859, were not placed of record till October, 1876, and that this suit was not brought till in 1883, six or more years after the lips of S. Milton Penn had been closed in death, who was the only other party to the transaction, and in view of the further fact that plaintiff's claim for relief rests solely on the evidence of E. S. Penn as to the facts giving rise to the alleged trust, and the fact that he gave his evidence concerning them, purely from memory, twenty-six years afterward, and was either mistaken as to the consideration paid him by Dallas, or Dallas and Philpot were mistaken, he testifying that the consideration paid him was two dollars per acre; they testifying that one of Philpot's warrants was given in exchange for the land—in view of these facts, and the further fact, that, while E. S. Penn undertook to give a reason why he entered the land in the name of his brother, no attempt was made to explain the reason why the land warrant was, in the first instance, assigned by Frances Sudbury to S. Milton Penn, the trial court was justified, under the rule above adverted to, in denying the relief prayed for, and in dismissing the bill. It

is claimed by counsel that the payment of taxes for two or three years preceding said Penn's death, and several years afterwards, should control in the decision of the case. It does not appear who paid the taxes, or whether they were paid at all between the years 1857, when the land was entered, and 1873. If it had appeared that after the land was entered, and plaintiff received his deed, he had regularly, from year to year, paid the taxes thereon, and that S. Milton Penn had knowledge of this, or gave no attention to the matter, there would be some force in plaintiff's contention.

On the case, as made, the judgment was for the right party, and it is hereby affirmed. All concur, except Brace, J., absent.