## MULOCK, Plaintiff In Error, v. MULOCK.

### Division Two, May 21, 1900.

1. **Express Trust: HOW CREATED.** The intention to create an express trust must be deducible from the words used. It must either be created by the instrument which conveys the real estate, or be proved by some writing signed by the party who is enabled by law to declare such trust.

2. ———: ———: CASE STATED. Defendant conveyed his land to his mother, and she paid a mortgage of $714 thereon, and by last will devised it to plaintiff, who sues in ejectment. The defendant in his answer set up that the land was conveyed to his mother in trust, under an express agreement that she should borrow $800 thereon, pay off the debt, and reconvey to him on payment of the mortgage for that amount and the demand of a deed, which conditions he had complied with, and that plaintiff had full knowledge of

all such facts when the devise was made. The deed to his mother was a warranty and contained no words indicating a trust, and no contract in writing signed by her acknowledged such a trust, nor was it manifested by any writing signed by her. *Held,* that the answer set up an express trust, which could be established only by written proof, and as none such was forthcoming, the trust was not created. *Held,* also, that the mother's action in devising the land to the plaintiff tends strongly to show that no written contract acknowledging the trust ever existed.

3. **Implied Trust:** PROOF. An implied or resulting trust can be established only by evidence that is so clear, unequivocal, definite and positive as to leave no reasonable doubt as to its existence in the mind of the chancellor.

4. ———: ———: CASE STATED. Defendant was indicted for criminal seduction, and was sued for $5,000 for breach of a promise to marry. He owed $500 to his mother and $255.50 to his sister and, about to leave the State to avoid prosecution and a civil judgment, he conveyed the land in question to his mother, who paid the daughter's note, and then devised the property to plaintiff, bequeathing to defendant some money which he received after her death. The evidence clearly shows that the deed was made to hinder and delay his creditors. Defendant claimed that the land was deeded to his mother in trust to be reconveyed to him on the payment of the debts to his mother and sister, and the only evidence to establish these facts was loose testimony most of which was unbelievable or incompetent. *Held,* that no implied or resulting trust was established, and judgment should have been for plaintiff.

Error to Worth Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED (*with directions*).

*Benson & Peery* and *Sanders & Phipps* for plaintiff in error.

(1) The trust mentioned in the answer as to the eighty acre tract of land involved in this appeal is clearly an express trust, according to all definitions of that term. Price v. Kane, 112 Mo. 412; Bobb v. Bobb, 89 Mo. 411; Weiss v. Heitcamp, 127 Mo. 23; 1 Beach, Mod. Eq., sec. 234; Rogers v. Ramey, 137 Mo. 598; Hillman v. Allen, 145 Mo. 638; Woodruff v.

Stephens, 51 Mo. 443; 1 Perry on Trusts, sec. 79.    (2) "The essential inquiry upon this record is whether the trust sought to be proved and enforced is an express trust or an implied resulting trust.    If express, there can be no resulting trust, and parol evidence is not admissible to prove that an absolute conveyance was made upon an express trust not declared in the writing itself.    Green v. Oates, 73 Mo. 115; Kingsbury v. Burnside, 58 Ill. 310; Stevenson v. Crapnell, 114 Ill. 19," Hillman v. Allen, 145 Mo. 644.    Such an express trust as is alleged in this case, can not be proved by parol.    The covenants in the absolute deed and the provisions of the will can not be varied or contradicted in such manner.    Hillman v. Allen, 145 Mo. 638; Curd v. Brown, 148 Mo. 92.    (3) "If, however, it was the intention of the pleader, to claim under an implied or resulting trust, then the rule, established by a long line of decisions of this court, is, that the evidence of such trust must be clear, strong and unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor."    Curd v. Brown, 148 Mo. 92.

BURGESS, J.—This action of ejectment was originally brought against the defendant and his brother Chancy Mulock, for the possession of two hundred acres of land in Worth county. The suit was afterwards dismissed as to Chancy Mulock, and the rights of the parties adjusted between them as to eighty acres of the land, which left in controversy the remaining one hundred and twenty acres which is described as the "east half of the northwest quarter of section thirteen, and the southeast quarter of the northeast quarter of section fourteen, in township sixty-five of range thirty-three."

The only land involved in this appeal is the eighty acre tract which lies in section thirteen, for the reason, that the trial court rendered judgment in plaintiff's favor for the rest, the forty acre tract.    Of these last two mentioned tracts the

eighty acre tract is called the George Mulock tract, and the forty acre tract the Munn tract.

The petition is in the usual form in such cases. The answer of the defendant George F. Mulock, does not deny that he was in the possession of the eighty acre tract of land in controversy at the time of the institution of this suit, but alleges in effect by way of cross-bill:

"That on the 5th day of August, 1885, he was the legal owner in fee of said tract, subject to two mortgages, one to A. Hosmer to secure $780, and the other to B. F. Herndon to secure $900; that during the season of 1885, being desirous of going to the state of Kansas, and it being necessary for him to arrange for the payment of said indebtedness to the said Hosmer and Herndon before leaving Worth county, he was advised to and did convey to his mother, Harriett E. Mulock, Sr., the said east half of the northwest quarter of said section 13, to hold in trust for him, during his absence, and for the further purpose of allowing, aiding and assisting his mother, Harriett E. Mulock, Sr., in securing an Eastern loan upon said land, with which to satisfy and discharge the said mortgage; and for the purpose aforesaid he did on the fifth day of August, 1885, convey said land to his mother in trust, she then and there agreeing with him that she would take and hold said land in trust for him, and would negotiate for and borrow the sum of $800, and secure said loan by a trust deed upon said land, and with the money so borrowed would pay the expenses of making the same and discharge the balance due on the debts aforesaid, to the amount of $714, and would re-convey said land back to him at such time as he should demand or request a deed, he the said defendant to assume and pay said loan of $800 so placed on said land by her. Defendant further states that said Harriett E. Mulock, Sr., accepted said deed and proceeded faithfully to carry out said trust, but before defendant was able to pay off and discharge said $800 loan so placed on said land, which he was

bound to do before having said land conveyed back to him, she sickened and died. That she had no interest whatever in said land, except to hold the title in trust for this defendant, but before her death she made and executed her last will, and by said will attempted to will and bequeath said east half of the northwest quarter of section 13 to the plaintiff in this case. That plaintiff was at the time of making said will and for a long time prior thereto fully advised of all the facts pertaining to or concerning the contract between defendant and his mother; she well knowing that his mother had no right whatever in said land, except that she held the same as trustee for this defendant, subject to an incumbrance of $800 as aforesaid, which defendant by the terms of his agreement with her was to assume and pay, and that she had no authority whatever to will or bequeath said land to plaintiff. Defendant further avers that the said attempted gift or bequest of said deceased to said plaintiff, by which she attempted to will said land to plaintiff was and is absolutely void and conveyed no right, title or interest whatever in said land to plaintiff. Defendant for further answer avers that plaintiff, well knowing that his mother held the title to said land as trustee for this defendant, and that she had no title thereto, yet the said plaintiff for the purpose of getting the title to said land in her name, and with the intent to defraud, cheat and swindle and wrong this defendant out of his said land, induced, procured and persuaded her mother to will and bequeath to her the said land by falsely and fraudulently representing that she, plaintiff, would take the title to said land and hold it in trust for defendant. That his mother relying upon and fully believing said false and fraudulent statements of plaintiff to be true, was induced to and did in and by her last will attempt to will and bequeath said land to plaintiff; that said bequest was made wholly upon her statements aforesaid, and that said land so bequeathed and willed to her by her mother, was not intended to be a bequest or gift to said plaintiff, but the same

was obtained by deceit and fraudulent representations of plaintiff. And notwithstanding the fact that she procured said land to be willed to her by the fraud and deceit she practiced upon her mother, yet plaintiff refuses to convey or transfer said land to defendant. That said bequest, being procured by fraud as aforesaid, was and is absolutely void and said plaintiff has no interest whatever in said land. That this defendant has fully and faithfully complied with the agreement between said Harriett E. Mulock, Sr., and himself, and has paid off and fully discharged the said deed of trust of $800 and all interest due thereon and secured a release of same, and has fully complied with all of the conditions of said agreement, and there now remains no reason why he should not be re-invested with the title to this real estate so conveyed to the said Harriett E. Mulock, Sr., by him as hereinbefore set forth."

The answer then concludes with a prayer that the title to this tract be divested out of plaintiff and vested in defendant.

Plaintiff made reply admitting the conveyance by defendant to his mother but denied all other allegations in the answer, and then proceeded as follows:

"For further reply to said separate answer, plaintiff alleges that no note or memorandum in writing was ever made of said supposed agreements or contracts alleged in said answer, and pretended therein to have been made between the defendant George F. Mulock and Harriett E. Mulock, Sr., and between said defendant and this plaintiff, and that said pretended contracts or agreements, if any such were ever made, were void and of no effect under the statutes of this State.

"For further reply, plaintiff alleges that all of the payments alleged in said answer to have been made by the defendant George F. Mulock on the indebtedness and mortgages against said land, mentioned in said answer, were in fact made with the money of Harriett E. Mulock, Sr., or of this plain-

tiff, or with money derived from the sale of property belonging to one or the other of them by said George F. Mulock, and that said George F. Mulock never at any time paid any of his own money on any of the indebtedness against said land.

"For further reply to said separate amended answer of defendant George F. Mulock, plaintiff alleges that about the year 1885 said defendant was charged with a felony in the circuit court of Worth county, to-wit, with the crime of seduction under the promise of marriage; that about said year he became a fugitive from justice on account of said charge; that before leaving said county of Worth and State of Missouri, he conveyed a part of the land mentioned in the petition to his said mother Harriett E. Mulock, Sr.; that said conveyance was made after the institution of the prosecution upon said charge of seduction under promise of marriage, and at a time when he expected to be sued for damages by the injured party upon said charge, and that said conveyance, as well as the other conveyances, supposed contracts and agreements set up and alleged in said separate answer were all and each of them made by said George F. Mulock with the intent and purpose upon the part of him, the said George F. Mulock, of hindering, delaying and defrauding his creditors, and of placing his property beyond the reach of his creditors, and beyond the reach of any process which might thereafter be issued upon any judgment in favor of the State of Missouri upon said charge or upon any judgment in favor of any other person, and so this plaintiff alleges that all of said supposed agreements and contracts set up and stated in said answer were void and of no effect."

Under the pleadings and evidence the court found for defendant as to the eighty acre tract, and rendered a decree vesting the title thereto in him. After unsuccessful motion for a new trial plaintiff sued out a writ of error and brings the case to this court for review.

It is clear from the evidence adduced by plaintiff that the legal title to the land in question was in her at the time of the institution of this suit, but the cross-bill alleges that she held the title for defendants as the trustee of an express trust. It is not alleged in the cross-bill that plaintiff held the title to the land as the trustee of an implied or resulting trust, but that defendant deeded the land to his mother "in trust, she then and there agreeing with him that she would take and hold said land for him......and would reconvey said land back to him at such time as he should demand or request a deed."

In order to the creation of an express trust, an intention to do so must be expressed from the words used, and although it need not be created by writing, when it relates to real estate, as in the case at bar, it must be proved in writing signed by the party who is or shall be, by law, enabled to declare such trust. [Sec. 5184, R. S. 1889; Lane v. Ewing, 31 Mo. 75.] It can not be proven by parol. [Hillman v. Allen, 145 Mo. 638.]

The deed from defendant to his mother was an ordinary warranty deed, and no instrument of writing signed by her showing that she held the land in trust for him was introduced in evidence on the trial. Nor was it shown that any such instrument had ever been executed by her. It is true that Chancy Mulock, a feeble-minded brother of the parties, testified that he was present a few days before defendant left for Kansas in the summer of 1885, and heard a conversation between the defendant and his mother about contracts or making the land over; that it was to be made over to George when he came back from Kansas; that he saw his mother's writing there on the stand, but could not say what it was; that the contract laid upon the table until evening, when she took the papers and put them away; that he heard plaintiff say that she had a contract.

Upon his cross-examination the witness was unable to give the year, month or day of the month upon which he was

born, or his age. He stated that he was about thirty years old at the time of the trial, and was born about four or five years before the civil war. He could neither read nor write. Certainly no credence whatever should be given to such testimony.

Mrs. Miriam Raynor, a witness for defendant, testified that Mrs. Mulock stated to her on one occasion, "that George has a drawn-up contract with me that will bring him out all right if he took care of it." This witness's deposition had been taken upon two former occasions in this action, but in neither of them did she say anything about the drawn up contract.

William Lemon, another witness for defendant, testified that plaintiff told him that she had a written contract between her mother and George, but that she did not tell him what was in the contract, and that he did not see it. That she said she had the contract, and that the land was to be deeded back to George when he was ready for it. That George was in Kansas over a year, and after he left that State a letter came there from his mother, addressed to him, which he, witness, opened and read, but there was nothing said in it about any agreement to reconvey the land. That in the letter she told George "that his stock was starving for want of warm food."

It seems incredible that, if Mrs. Mulock had made the statement to Mrs. Raynor with respect to the "drawn-up contract" between her and George which she testified to upon the trial, she should have failed to mention it upon the former occasions upon which her depositions were taken. Besides, George never had any such contract, which shows, in so far as the evidence of this witness is concerned, either that no such contract ever existed, or that she was mistaken as to what Mrs. Mulock said with respect to it, or that Mrs. Mulock was mistaken when she stated that George had it. But Mrs. Mulock's act in willing the land to her daughter tends strongly to show that no such contract ever existed, and that the wit-

ness was mistaken in regard to the statement which she says Mrs. Mulock made to her in respect to the contract, and that she in fact made no such statement.

The testimony of the witness Lemon, shows him not only to be unworthy of belief, but even if true, it falls far short of showing that Mrs. Mulock ever signed any declaration of trust showing that she held the land in question in trust for the defendant, which was indispensable in order to establish such a trust. The letter from George's mother to him which this witness testified to having received, opened and read, said nothing about any agreement by Mrs. Mulock to convey the land to George, and was therefore of little consequence. But the evidence all showed that when George left Missouri for Kansas he owned no stock of any kind or description, and that this witness's testimony in regard to what George's mother wrote to him about his stock starving for the want of warm feed was absolutely untrue. Not only this, but plaintiff testified as a witness in her own behalf, and denied all the statements made by Lemon in regard to admissions made by her to him in respect to a contract of any kind by which her mother undertook to hold the land in trust for defendant.

There was no evidence tending to show that a declaration of trust was ever signed by Mrs. Mulock, showing that she held the land in trust for the defendant as required by statute. Therefore defendant was not entitled to recover upon that ground.

As it is not alleged in the cross-bill that the agreement therein stated by which defendant's mother was to hold the land in trust for him and reconvey it to him at such time as he should demand or request a deed, was in writing, it may have been the intention of the defendant to claim under an implied or resulting trust. And proceeding upon this theory it may be said that the doctrine of this court is, that in order to establish such a trust the evidence must be clear, and unequivocal and so definite and positive as to leave no reasonable

doubt as to its existence in the mind of the chancellor.    [Forrester v. Scoville, 51 Mo. 268; Kennedy v. Kennedy, 57 Mo. 73; Gillespie v. Stone, 70 Mo. 505; Darling v. Potts, 118 Mo. 506; Bradley v. Bradley, 119 Mo. 58; Reed v. Painter, 129 Mo. 674; Curd v. Brown, 148 Mo. 82.]

Aside from the evidence of mere loose declarations and statements said to have been made by Mrs. Mulock, there was nothing tending to show an implied or resulting trust in the land in favor of defendant.    In Curd v. Brown, 148 Mo. loc. cit. 92, MARSHALL, J., in speaking for the court said: "Evidence of mere loose declarations of the person holding the legal title will not be sufficient, and testimony of verbal admissions or statements of persons, since dead, is entitled to small weight in establishing such a trust."

At the time of the execution of the deed from defendant to his mother, he deemed it necessary for him to leave the State in order to evade a prosecution for felony then pending against him for which he had been arrested, but escaped from the officer who had him in custody.    There was also pending a suit against him for $5,000 damages growing out of the same transaction.    His mother held his note for $500, and his sister, Julia A. White, held his note for $255.50, both dated on the first day of May, 1885, and due two years after date secured by a deed of trust on personal property.    His mother assumed the payment of the note to his sister, and satisfied her own against him in consideration of the deed from him to her for the land, and upon the execution of the deed therefor to her defendant left the country, and remained absent for over a year.    When Mrs. Mulock got the deed she assumed the payment of the mortgages on the land, and borrowed in part the money for their payment, at the same time executing a deed of trust upon the land to secure the payment of the money which she borrowed.    By her will she bequeathed to defendant a small sum of money, which he received, and devised the land to her daughter, the plaintiff in this suit.    The fact

that Mrs. Mulock devised the land to her daughter refutes all the loose statements imputed to her by witnesses to the effect that she held it in trust for defendant. A mother is rarely unjust to her child, and if the land was defendant's, it is hardly probable that she would have given it to another of her children. She evidently never regarded it as his land, or that she held it in trust for him. And the fact that he received the money given him by the will, knowing that his mother had devised the land to his sister, tends strongly to show that the idea that his mother held the title thereto in trust for him was an afterthought. Defendant's acts with respect to the land after his mother's death were simply self-serving, and had no effect whatever upon the rights of the parties, which were then fixed. During the trial defendant was permitted over plaintiff's objection to testify to acts of his in respect to the land, which were immaterial, and to others to which he was incompetent to testify, because of the death of his mother.

Moreover, the evidence clearly shows that one of his objects in conveying the land to his mother was to place it beyond the reach of any judgment that might be recovered against him in the action for damages then pending against him, and though it may have been fraudulent as to creditors, as between the defendant and his mother it was valid and binding.

Our conclusion is that the evidence falls far short of establishing by clear and convincing proof, the fact that Mrs. Mulock held the title to the land in trust either expressed or implied for defendant.

We therefore reverse the judgment and remand the cause, with directions to the court below to enter up judgment for plaintiff for possession of the lands, together with rents and profits, to which she may be entitled. *Gantt, P. J.*, and *Sherwood, J.*, concur.